# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                )
**CONSUMER FINANCIAL**           )
**PROTECTION BUREAU**, *et al.*, )
                                )
    **Plaintiffs,** )
                                )
    **v.**      )    **Civil Action No. 13-2025 (RMC)**
                                )
**OCWEN FINANCIAL**              )
**CORPORATION**, *et al.*,       )
                                )
    **Defendants.** )
_____ )


## MEMORANDUM OPINION REGARDING OBJECTION TO CONSENT JUDGMENT

    Alleging misconduct in home mortgage practices, the Consumer Financial

Protection Bureau (CFPB), the District of Columbia, and forty-nine States,[1] sued Ocwen

Financial Corporation and Ocwen Loan Servicing, LLC (collectively, Ocwen). All parties

agreed to a settlement, resulting in a consent judgment. Chris Wyatt filed an Objection to the

Consent Judgment, which the Court treats liberally as a motion to intervene.[2] As explained

below, the motion to intervene will be denied.

### I. FACTS

    Ocwen acquired two companies: Homeward Residential, Inc. and Litton Loan

Servicing, LP. On December 19, 2013, Plaintiffs filed this case alleging that Ocwen, as

---

[1] The State of Oklahoma did not participate.

[2] Courts construe *pro se* pleadings liberally. *See United States v. Byfield,* 391 F.3d 277, 281
(D.C. Cir. 2004); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (*pro se* complaints are
held to "less stringent standards than formal pleadings drafted by lawyers . . .”). Even so, a
litigant's *pro se* status is not a "license . . . to ignore the Federal Rules of Civil Procedure."
*Jarrell v. Tisch*, 656 F. Supp. 237, 239 (D.D.C. 1987).

successor to Homeward and Litton, is liable for their illegal practices. Compl. [Dkt. 1] ¶ 5. For example, Plaintiffs allege that Ocwen is liable for failing to timely and accurately apply payments, charging unauthorized fees, imposing force-placed insurance on borrowers who already had sufficient coverage, providing false or misleading information in response to borrowers' complaints, and failing to properly calculate eligibility for loan modification programs. *Id.* ¶ 20. The Complaint set forth the following four Counts:

> Count I—violations of State law prohibiting unfair and deceptive consumer practices with respect to loan servicing;

> Count II—violations of State law prohibiting unfair and deceptive consumer practices with respect to foreclosure processing;

> Count III—violations of Consumer Financial Protection Act of 2010, 12 U.S.C. §§ 5481, *et seq.*, with regard to loan servicing;

> Count IV—violations of Consumer Financial Protection Act of 2010, *id.*, with regard to foreclosure processing.

Compl. ¶¶ 21-30. When Plaintiffs filed the Complaint, they also filed a proposed consent judgment, agreed by all parties and designed to address past servicing misconduct and transform servicing practices going forward. *See id.*, Attachment 2 [Dkt. 1-2].

On February 26, 2014, the Court entered the Consent Judgment, which requires Ocwen to provide (1) $127.3 million in monetary relief for consumers who were foreclosed upon by Ocwen (or its predecessors) between January 1, 2009, and December 31, 2012, and (2) $2 billion of relief in the form of principal reduction loan modifications to consumers who meet set eligibility criteria over a three-year period. *See* Consent J. [Dkt. 12] at 9-10. The Consent Judgment provides for an independent monitor, Joseph A. Smith, Jr., to oversee compliance. *Id.* at 10. Individual borrowers do not release or waive any legal right or claim as a condition of receiving payments under the Consent Judgment. *Id.*, Ex. B [Dkt. 12-2] (Borrower Payment Amount) at 2. The only effect of receiving a foreclosure payment under the settlement is that the

payment amount may offset or reduce any other compensation.  *Id*.; Pls. Resp. [Dkt. 14] at 7. The Plaintiff States' Release expressly exempts and reserves "[c]laims and defenses asserted by third parties, including individual mortgage loan borrowers on an individual or class basis" as well as "[c]laims against Ocwen for reimbursement to mortgage borrowers" related to fees later determined to be prohibited by State law.  *Id*., Ex. F [Dkt. 12-9] (State Release) at 9.  CFPB's Release only releases liability that "has been or might have been asserted by CFPB" not by anyone else.  *Id*., Ex. E [Dkt. 12-5] (CFPB Release) at 3.

Mr. Wyatt filed an Objection to Consent Judgment, claiming that the settlement "fails to provide all Ocwen Homeowners who were harmed as a result of Ocwen's wrongful servicing practices equitable relief and compensation."  Objection to Consent J. [Dkt. 13] at 8-9. He alleges that homeowners "have no realistic indication of what dollar amount . . . they may receive" and it is unknown how many homeowners are affected.  *Id*. at 9.  He further complains about the customer service he received when contacting Ocwen on behalf of another homeowner, *see id*. at 12-14, and he seeks the appointment of an independent consumer rights organization to monitor Ocwen, *see id*. at 15.  Mr. Wyatt does not allege that he was ever a homeowner with a loan serviced by Ocwen or its predecessors or that he is affected personally by the Consent Judgment.

## II.  LEGAL STANDARD

An applicant may intervene as of right when the applicant (1) makes a timely motion; (2) has an interest relating to the property or transaction that is the subject of the action; (3) is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest; and (4) where the applicant's interests are not adequately represented by the existing parties.  Fed. R. Civ. P. 24(a); *see also Sierra Club v. Van*

*Antwerp*, 523 F. Supp. 2d 5, 6 (D.D.C. 2007).  An alternative to "intervention as of right" is "permissive intervention," whereby a court may permit an applicant to intervene if he makes a timely motion, he has a claim or defense, and that claim or defense shares with the main action a common question of law or fact.  Fed. R. Civ. P. 24(b).  Permissive intervention is an "inherently discretionary enterprise."  *EEOC v. Nat'l Children's Ctr.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998).  In determining whether to allow intervention, a court must consider whether intervention will unduly delay or prejudice the adjudication of the original parties' rights.  Fed. R. Civ. P. 24(b)(3).

Intervention is not ordinarily allowed after entry of judgment, unless unique circumstances are presented, such as where the intervenor's interests were inadequately represented.  *Smuck v. Hobson*, 408 F.2d 175, 182 (D.C. Cir. 1969).  A district court acts within the bounds of its discretion when it chooses to deny intervention to avoid the risk of undoing a hard-won settlement.  *Moten v. Bricklayers, Masons & Plasterers Int'l Union of Am.*, 543 F.2d 224, 228 (D.C. Cir. 1976) (affirming the district court's denial of motion to intervene as untimely where the motion was filed on the eve of settlement); *see also Cal. Dep't of Toxic Substances Control v. Commercial Realty Projects, Inc.*, 309 F.3d 1113, 1119 (9th Cir. 2002) (not permitting intervention because it would "complicate the issues and upset the delicate balance achieved" by a consent decree).

In addition, an intervenor must satisfy Article III standing requirements.  *United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1146 (D.C. Cir. 2009).  To show standing, a litigant must establish that "(1) [he] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely

speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). "This triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103-04 (1998); *see also Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987) (lack of standing is a defect in subject matter jurisdiction).

## III. ANALYSIS

Allowing Mr. Wyatt to intervene at this late juncture would be prejudicial to the parties as it would disrupt a final judgment, involving a large and complex settlement, that had been in place for almost three months before Mr. Wyatt filed his motion. Plaintiffs announced the proposed consent judgment when it was filed on December 19, 2013, by issuing a press release, holding a press conference, and posting on the CFPB website answers to frequently asked questions about the settlement. *See* CFPB, State Authorities Order Ocwen to Provide $2 Billion in Relief to Homeowners for Servicing Wrongs, http://www.consumerfinance.gov /newsroom/cfpb-state-authorities-order-ocwen-to-provide-2-billion-in-relief-to-homeowners-for-servicing-wrongs, Dec. 19, 2013 (last visited May 12, 2014); Frequently Asked Questions About the Ocwen Settlement, Dec. 2013, http://files.consumerfinance.gov/f/201312_cfpb_common-questions_ocwen.pdf (last visited May 12, 2014). The full text of the proposed judgment has been available through the Court's electronic PACER system since this case was filed, and via PACER all pleadings, filings, and court orders are publicly available. Nonetheless, Mr. Wyatt did not object until March 11, 2014. Such a delayed motion would disrupt the settlement and prejudice the parties.

Also fatal to his motion to intervene is the fact that Mr. Wyatt does not make any claims of his own; he makes claims only with regard to unnamed "Ocwen Homeowners." *See, e.g.*, Objection to Consent J. at 8-9. Even if he were a homeowner with a mortgage serviced by Ocwen or its predecessors, Mr. Wyatt cannot actually claim injury from the Consent Judgment because the Consent Judgment preserves the claims of individual homeowners. Mr. Wyatt has not shown Article III standing to sue or any interest giving rise to mandatory intervention under Rule 24(a). The Court is not persuaded that it should exercise its discretion and allow permissive intervention under Rule 24(b) at this late stage of the proceedings.

Because Mr. Wyatt has not demonstrated a personal interest at stake and permitting intervention at this late date would disrupt a large and complex settlement, the request for intervention will be denied.

## IV. CONCLUSION

For the foregoing reasons, Chris Wyatt's Objection to the Consent Judgment [Dkt. 13], which is treated as a motion to intervene, will be denied. A memorializing Order accompanies this Memorandum Opinion.

Date: May 15, 2014

_____/s/_____
ROSEMARY M. COLLYER
United States District Judge